STATE OF MISSOURI at the Relation of WILLIAM KLEIN, Relator, v. WILLIAM C. HUGHES, EDWARD J. McCULLEN and LYON ANDERSON as Judges of the St. Louis Court of Appeals.—No. 37770.—173 S. W. (2d) 877.

Division Two, July 6, 1943.

Motion to Transfer to Banc Overruled, September 7, 1943.

*Phil C. Donnelly, George A. Rozier* and *Matthes & Weier* for relator.

652

*Albert S. Ennis* for respondents.

██ ELLISON, J.—██ Certiorari to the respondent judges of the St. Louis Court of Appeals bringing up the record in State ex rel. Klein v. Balsiger et al., 151 S. W. (2d) 521. The case involves the construction of Sec. 4906, R. S. 1939, Mo. R. S. A., sec. 4906, in the Liquor Control Act. Relator's principal contention is that respondents' opinion gives the statute an impossible interpretation, conflicting with canons of construction which are well settled by the decisions of this court; and that certiorari therefore will lie under State ex rel. Wors v. Hostetter, 343 Mo. 945, 959, 124 S. W. 1072, 1078. That decision holds: "when a statute plainly can have only one meaning under canons of construction established by this court, and a Court of Appeals gives it another meaning, we may interfere because there the *necessary* effect of such erroneous holding is to violate the cannons of construction—as much so as if they were expressly denounced."

Before stating the facts of the case, let us say the above doctrine quoted from the Wors opinion confines our review within *very* narrow limits. Earlier in the same paragraph the opinion concedes the Courts of Appeals have the same right as we have to construe statutes, even erroneously. It is only when the proper construction of the statute is uncontrovertible that we can intervene. The doctrine is analogous to that stated in State ex rel. K. C. So. Ry. Co. v. Shain, 340 Mo. 1195, 1203(7), 105 S. W. (2d) 915, 920(9, 10), where it was held a Court of Appeals has the same right as this court to decide that a given state of facts substantially tends to prove another ultimate fact; but if that conclusion be contrary to *physical laws or universal knowledge,* then this court can interfere by certiorari. (Again, a rare occurrence.) On the other hand, in construing a statute we may consult the same canons and resort to the same extrinsic aids to construction as were available to the lower courts. And although the meaning of the statute *on its face* may be debatable and open to construction, yet if in the light of those canons and aids the meaning of the statute is certain, then certiorari will lie.

Since the facts are fully stated in the reported opinion, supra, of the relators, we shall merely sketch them here. The case was tried in the circuit court on a written agreed statement of facts. It was a mandamus suit to compel the mayor and board of aldermen of Crystal City, in Jefferson County, to issue to relator a license to sell intoxicating liquor in the original package in his drug store in that city. There was

a city ordinance forbidding the granting of such a license to any person who was not a qualified legal voter and taxpaying citizen of Crystal City. Relator was not a voter and taxpayer of Crystal City but resided in Festus, another city in the same county, where he was a voter and taxpayer. The mayor and board of aldermen refused to grant the license because he did not come within the provisions of the ordinance since he was not a voter and taxpayer of Crystal City. It is conceded he was otherwise qualified. The trial judge granted a peremptory writ; and respondents reversed that decision on appeal.

The question in the case was whether the ordinance was invalid because it conflicted with the statute, Sec. 4906, supra, which, in turn, called for a proper construction of the statute. The latter provides (we italicise the words directly involved):

"No person shall be granted a license hereunder unless such *person* is of good moral character and *a qualified legal voter and a taxpaying citizen of the county, town, city or village*, nor shall any *corporation* be granted a license hereunder unless the managing officer of such corporation is of good moral character and *a qualified legal voter and taxpaying citizen of the county, town, city or village*; . . . *Provided*, that nothing in this section contained shall prevent the issuance of licenses to nonresidents of Missouri or foreign corporations for the privilege of selling to duly licensed wholesalers and soliciting orders for the sale of intoxicating liquors, to, by or through a duly licensed wholesaler, within this state."

Respondents' opinion reasons the statute clearly evidences an intention that the licensee must be more than a voter and taxpaying citizen of the county because immediately [879] following that word in the section are the words "town, city or village." The opinion then points out that sometimes a liquor selling business drives other legitimate businesses from the locality, and often has other objectionable features. It then argues that the public would be better protected and the licensee would have more inducement to conduct an orderly place, if he were a voter and taxpayer of the city, town or village where it is located. But the opinion then acknowledges: "However, it is not for the court to seek or point out the reasons which actuated the legislative mind; rather our concern is whether from what the Legislature has said, a definite and clear meaning can be attached to each and every word in the legislative Act, and not do violence to correct and reasonable thinking."

From this observation it will be seen the opinion assertively bases its construction of the statute upon a consideration of "each and every word in the legislative Act." But it makes no express reference anywhere to any other part of the Liquor Control Act, nor to any other part of the section, itself, save that set out above dealing with corporate licensees and requiring the managing officer thereof to

be a voter and taxpayer "of the county, town, city or village." The opinion concludes that where liquor is sold at a place in a county outside of any city, town or village, the licensee must be a voter and taxpayer only of that county; but where it is sold in a city, town or village, the licensee must be a voter and taxpayer of that municipality. Then the opinion considers a contention made by relator in the Court of Appeals, which pointed out that the Attorney General had ruled the managing officer of a corporate licensee is not required to be a voter and taxpayer of the municipality where the liquor is sold, and argued the same privilege should be accorded to individual licensees. In answer (and expressly without either approving or disapproving the Attorney General's ruling) the opinion holds the Legislature was empowered to fix different qualifications for corporate and individual licensees. The opinion does not review the history of the legislation.

We will concede the statute on its face seems ambiguous. It merely requires that both an individual licensee and the managing officer of a corporate licensee shall be a voter and taxpayer "of the county, town, city or village." There it stops, without specifying *what* county, town, city or village. The briefs of both parties concede these words must refer to one of two places: (1) where the individual licensee or officer of the corporate licensee *resides* in the state; (2) or where the license is *issued* and the liquor *is to be sold*. Respondents, as stated, have decided the second alternative is the one to be adopted; and the brief of their counsel asserts the first alternative is ridiculous, because it could mean no more than that the licensee must *reside where he resides*, or at least that he merely must be a voter and taxpayer of the place where he resides *anywhere* in the State—this last in view of the closing proviso of the section, which implies a retail licensee cannot be a nonresident since it limits nonresident licensees to activities connected with wholesaling.

Relator answers that if respondents had looked behind the *face* of the statute at its underlying history, the fact would be indisputable that the first alternative is the one to be adopted. And it cannot be denied that one of the accepted canons of statutory construction permits and often requires an examination of the historical development of the legislation, including changes therein and related statutes. Grimes v. Reynolds, 94 Mo. App. 576, 584, 68 S. W. 588, 590, 184 Mo. 679, 688, 83 S. W. 1132; State ex rel. Columbia Nat'l Bank v. Davis, 314 Mo. 373, 388, 284 S. W. 464, 470(7); Rust v. Mo. Dental Board, 348 Mo. 616, 623(1), 155 S. W. (2d) 80, 83(1).

Developing this point relator shows that soon after the adoption of the twenty-first Amendment of the Federal Constitution repealing the prohibition amendment, the first Liquor Control Act was passed by Laws Mo. 1933-4 (Ex. Sess.) p. 77. The applicable part of

Sec. 27 thereof (p. 88) which at least covers all retail licensees, did not contain the provision of the present Sec. 4906 concerning corporate licensees, but otherwise provided as follows (italics ours):

"No person shall be granted a license hereunder, unless such person is of good moral character *and a native born or naturalized citizen of the United States of America,* and a qualified legal voter and taxpaying citizen of the county, town, city or village *wherein such person seeks a license hereunder;* . . . ."

By Laws Mo. 1935, pp. 267, 277, the aforesaid Sec. 27 was repealed, and a new Sec. 27 enacted in lieu thereof, which dropped [880] the words we have italicised and added the present provision about corporate licensees. The concluding proviso was added by repeal and reenactment in Laws Mo. 1937, pp. 527, 533, bringing Sec. 4906, *supra,* to its present form. The 1935 Act also added a new Sec. 27a covering only retail dealers in liquor by the drink (not package) which is now Sec. 4907, R. S. 1939, Mo. R. S. A., sec. 4907. That section is as follows (italics ours):

Sec. 27a. "No *person* or *corporation* . . . shall have *more than three licenses,* nor be directly or indirectly interested in any business of any other person or corporation, . . . to sell intoxicating liquor, at retail by the drink for consumption on the premises described in any such license, nor shall any such intoxicating liquor be sold at retail by the drink for consumption at the place of sale *at more than three places in this state,* by any person or corporation, . . . ."

What is the effect of these legislative changes? The general rule is that when *part* of a statute is repealed by an amendatory act, the provisions retained are regarded as a continuation of the former law, while those omitted are treated as *repealed.* Belfast Investment Co. v. Curry, 264 Mo. 483, 496, 175 S. W. 201, 204(2). Such amendments have been accepted as controlling evidence of the legislative intent. 59 C. J., sec. 612, p. 1035. The presumption is that the Legislature intended the unamended part to remain operative and effective as before, State ex rel. Dean v. Daues, 321 Mo. 1126, 1151-2, 14 S. W. (2d) 990, 1002(9-11). But the whole statute as amended should be construed on the theory that the lawmakers intended to accomplish something by the amendment. Holt v. Rea, 330 Mo. 1237, 1241-2, 52 S. W. (2d) 877, 878(5); Smith v. Equitable Life Assur. Soc., 232 Mo. App. 935, 943, 107 S. W. (2d) 191, 195(4); 59 C. J., sec. 647, p. 1097.

Consider these canons in connection with the facts here. When Sec. 4906 was first enacted it contained an express provision making it *say* what respondents hold it still means, namely that the licensee must be a voter and taxpayer of the county, town, city or village—wherein he seeks a license. Those last words and another

provision (barring alien licensees) were stricken out in 1935; and at the same time and in the next section of the same Act it was provided that a retail dealer in liquor by the drink (who, also, is a licensee under Sec. 4906) may have not *more* than *three* licenses, nor shall he sell at more than three places in the state. Obviously such a licensee could not be a voter and resident taxpayer of three counties, towns, cities or villages at the same time. Can it be argued that to harmonize the two sections we must say if he has three such places they must all be in the *same* town, where he lives? If we do that, what becomes of the provision that he shall not sell at more than three places *in this state*?

It seems very clear to us that the words "wherein such person seeks a license hereunder," appearing in Sec. 27 of the original Liquor Control Act must be considered as having been repealed when that section was reenacted without them in 1935, especially in view of the added Section 27a. The only query that arises in reaching that conclusion is the one suggested by the brief of respondents' counsel: why was Sec. 27, the present Sec. 4906, left requiring the licensee to be a voter and taxpayer of "*the* county, town, city or village" without specifying *what* one? Yet we know the provision in the 1934 section barring alien licensees was dropped in 1935, and that the concluding proviso of Sec. 4906 was added in 1937 restricting nonresidents to wholesaling activities.

The thought about the residence of the licensee has been in the legislative mind for the last ten years and that subject has been directly dealt with three times by amendments. We have it on Biblical authority that he is a botcher who mendeth an old garment with new cloth. St. Mark, 2, 21. Yet it is still a garment. So, also, the meaning of a statute may be plain though it contain mistakes in writing, grammar, spelling, punctuation, misnomers, misdescriptions, surplusage, or omit words. See many cases cited, 26 West's Mo. Dig., "Statutes," secs. 200-203. Considered with its context and in the light of its history, there is nothing in Sec. 4906 repelling the construction which counsel for respondent concede it must bear if their interpretation be rejected, viz.: that the retail licensee cannot be a nonresident, but must be a voter and taxpayer of some county, town, city or village in the state where he resides.

This brings us back to the original question. Is that construction so clear and uncontrovertible as to warrant us in substituting our judgment for respondents'. If it were on almost anything else we [881] would answer No. But on the only question before us here we must say Yes. We have the conviction that the statute does not and cannot still mean the licensee must be a voter and taxpayer of the county, town, city or village wherein he seeks the license, when that last adverbial clause was stricken from it eight years ago and

another provision added which by clear implication permits him to have more than one license at the same time at different places in the state. None of the questions we have discussed are considered in respondents' opinion. We have not seen the briefs filed in the Court of Appeals. The record here shows the same questions were raised in relator's motion for rehearing filed in that court, but were not developed quite so fully.

For the reason stated it is ordered that the record be quashed. All concur.