Dear Mr. Hassler:
This is in response to your request for an opinion on the following questions:
 1. Under Section 205.968 to 205.972 of the Revised Statutes of Missouri, does the Platte County Sheltered Facilities Board have the authority and power to own property in the name of the Platte County Sheltered Facilities Board? By way of explanation it has been suggested that the Platte County Sheltered Facilities Board lacks authority to take legal title to property and that any property utilized for the purposes of the Platte County Sheltered Facilities Board and purchased by the Platte County Sheltered Facilities Board should be owned by Platte County.
 2. Under Section 205.968 to 205.972 of the Revised Statutes of Missouri and Article 6, Section 26, of the Missouri Constitution, does the Platte County Sheltered Facilities Board have the authority to borrow money to purchase property and construct facilities to provide services for handicapped persons as defined in Section 178.900 RSMo (1969) [sic]? The Platte County Sheltered Facilities Board has a waiting list of "handicapped persons" desiring to be placed in a facility, but does not have sufficient funds to build a facility without borrowing money.
The county court or other governing body of a county or a city not within a county is authorized to establish a sheltered workshop and/or residence facility for the care and/or employment of handicapped persons. Section 205.968.1, RSMo 1978. Where such a facility is established, the governing body of the county or city shall appoint a nine-member board of directors. Section 205.970.1, RSMo Supp. 1981.
Section 205.970 further provides that:
 2. The administrative control and management of the facility shall rest solely with the board of directors, and the board shall employ all necessary personnel, fix their compensation, and provide suitable quarters and equipment for the operation of the facility from funds made available for this purpose.
* * *
 5. The board shall set rules for admission to the facility, and shall do all other things necessary to carry out the purposes of sections 205.968 to 205.972.
 6. The board may contract with any not for profit corporation including any corporation which is incorporated for the purpose of implementing the provisions of sections 178.900
to 178.970, RSMo, for any common services, or for the common use of any property of either group.
 7. The board may accept any gift of property
or money for the use and benefit of the facility, and the board is authorized to sell or exchange any such property which it believes would be to the benefit of the facility so long as the proceeds are used exclusively for facility purposes. [Emphasis added].
Our task in rendering this opinion is to seek the intent of the legislature. This is the primary rule of statutory construction.City of Willow Springs v. Missouri State Librarian,596 S.W.2d 441, 445 (Mo. banc 1980). In addition, we are to assign the words and phrases employed by the legislature their usual, plain and ordinary meaning. State ex rel. Ashcroft v. UnionElectric Co., 559 S.W.2d 216, 221 (Mo.App. 1977).
We find no express statutory provision granting authority to such a board to acquire legal title to property. Thus, the question essential for resolution of your request is whether such a power is necessarily or fairly implied in Section 205.970.
We answer affirmatively. Subsection 2 requires the board of directors to "provide suitable quarters and equipment for the operation of the facility from funds made available for this purpose." The word "quarters" is defined as "lodgings, place of abode." Webster's New World Dictionary (2nd Ed. 1980). Thus, we believe that the duty to provide quarters and equipment (property) necessarily infers an authorization to own property. We note that the board of directors is to provide quarters "from funds," the inference being that the board is to provide such quarters through an expenditure of funds and not merely to accept property provided by the county court. Said another way, the governing body of the county or city is to make funds (not property) available to the board.
In addition, subsection 7 empowers the board of directors to "accept any gift of property or money for the use and benefit of the facility." Section 205.970 makes no distinction between real and personal property. The board may "sell or exchange any such property . . . so long as the proceeds are used exclusively for facility purposes."
We believe that the express powers granted to a sheltered facility board of directors in Section 205.970 necessarily imply an authority to own property in its own name. Without such authority, the ability of the board to carry out its statutory mandate is diminished.
In answer to your second question, we find neither express nor implied constitutional or statutory authority which would allow sheltered facility boards to borrow money in anticipation of the collection of revenues. Although such boards may ". . . expend tax funds or other funds" under Section 205.970.3, that subsection confers no authority to borrow money. In contrast, Section 50.060, RSMo 1978, provides express authorization for county courts of second class counties, such as Platte County, to borrow money in anticipation of the collection of taxes and revenues for the current fiscal year. If such a county court wishes to borrow money in excess of its income and revenues for that year, it must seek voter approval under Article VI, Section 26(b) of the Missouri Constitution. In no event would the sheltered facility board have such authority, even with voter approval.
Our Opinion No. 41, Lampo, 1980, addresses questions similar to those you raise. To the extent that Opinion No. 41 holds that a mental health board of trustees may not hold title to real property, such opinion is hereby modified consistent with our holding herein that a board of directors of a sheltered facility (and a mental health board of directors) may hold title to property.
CONCLUSION
It is our opinion that the board of directors of a sheltered workshop or residence facility may hold title to property. It is further our opinion that such a board of directors does not have authority to borrow money to purchase property and construct facilities.
Very truly yours,
 JOHN ASHCROFT Attorney General